UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>RAMON AGUIRRE AND BERTHA AGUIRRE,<br><br>                    Debtors,<br>WHEELER FINANCIAL, INC.,<br><br>                    Appellant,<br>               v.<br><br>JPMORGAN CHASE BANK, N.A., RAMON AGUIRRE, AND BERTHA AGUIRRE<br><br>                  Appellees. | Civil Case Nos. 18-cv-07915, 19-cv-01232, 19-cv-01233<br><br>Bankr. Case No. 14-24420<br><br>Judge Martha M. Pacold |

**Memorandum Opinion and Order**

      This bankruptcy appeal addresses three orders entered by the bankruptcy court in the Chapter 11 proceedings of Debtors Ramon and Bertha Aguirre ("the Debtors"). JPMorgan Chase Bank, N.A. ("Chase") loaned the Debtors money and had a security interest in their commercial property. Wheeler Financial, Inc. ("Wheeler") had a tax lien on that property. After the bankruptcy court confirmed a Chapter 11 reorganization plan, it granted Wheeler relief from the bankruptcy proceeding's automatic stay and declined to allow the Debtors to modify the reorganization plan. Chase and the Debtors appealed, and the district court reversed. On remand, the bankruptcy court entered the three orders at issue in this appeal. For the following reasons, the court affirms two of those orders and vacates the third.

**Background**

      The court assumes familiarity with Judge Norgle's opinion on the prior appeal from this case. *See In re Aguirre*, 565 B.R. 646, 648 (N.D. Ill. 2017). That decision describes the history of this dispute in detail, *id.* at 648–51, and the court reviews those facts only briefly here.

The Debtors own a commercial property located at 1374 West Grand Avenue in Chicago, Illinois, and run a restaurant located inside. [11-1] at 4.[1] In 2009, Chase provided the Debtors a loan that was collateralized by both the Debtors' residential property, located in Lisle, Illinois, and the Chicago commercial property containing the restaurant. [11-1] at 9, 100, 698.

The Debtors did not pay their 2010 real estate taxes on the restaurant property, so the Clerk of Cook County sold a Certificate of Purchase to the property to Wheeler at a 2012 tax sale, giving Wheeler a tax lien on the property. [11-1] at 25, 33. Wheeler continued to pay the property taxes in subsequent years. [11-1] at 35–42. As of February 2019, Wheeler's tax claim totaled $68,528.55. [11-1] at 98.

On June 30, 2014, the Debtors filed for Chapter 11 bankruptcy. [11-1] at 249. They did not list Wheeler or the Clerk of Cook County as a creditor at that time.

Meanwhile, Wheeler filed a petition for a tax deed in the Circuit Court of Cook County on December 10, 2014. [11-1] at 48. The Debtors did not file an appearance, and Wheeler did not serve Chase with a summons.

In February 2015, the Debtors filed in bankruptcy court a Second Amended Plan of Reorganization (the "Plan") with three classes of creditors. [11-1] at 84–93. Class One was Chase, Class Two was Wheeler, and Class Three consisted of non-priority unsecured creditors. The Debtors' Plan contemplated a full payment to Wheeler, funded by the sale of another of the Debtors' properties. [11-1] at 92.

Wheeler argued that it did not receive actual notice of the bankruptcy filing until it received a Certificate of Service of Class Two Ballots on March 1, 2015. By this point, Wheeler had missed the deadline to file a proof of claim in the bankruptcy court. [11-1] at 106. Nevertheless, after receiving notice of the bankruptcy proceedings, Wheeler was able to participate in those proceedings by negotiating an additional provision in its claim which required the Debtors to pay the entire balance owed to Wheeler within six months of Plan confirmation. [11-1] at 300. The bankruptcy court confirmed that Plan, including that provision, on April 15, 2015. [11-1] at 283.

The Debtors did not make any payments to Wheeler within the six-month period, which ended on October 15, 2015. [11-1] at 27. In November 2015, Wheeler filed a motion for relief from the automatic stay under 11 U.S.C. § 362(d)(1) in order to pursue the pending state court petition for a tax deed.[2] [11-1] at 22. In

---

[1] Bracketed numbers refer to entries on the district court docket and are followed by the page and / or paragraph number. Page number citations refer to the CM/ECF page number.
[2] A Chapter 11 petition "operates as a stay, applicable to all entities, of . . . the enforcement, against the debtor or against property of the estate, of a judgment obtained before the

2

December, the Debtors filed a motion to modify the Plan to extend the due date for its payment to Wheeler by six months (to April 15, 2016) and to provide a guaranty that Chase would pay if the Debtors could not. [11-1] at 301, 306, 308. At a January 2016 hearing, counsel for the Debtors and Chase appeared with $50,000 in cashier's checks and offered to pay Wheeler immediately, rather than within the proposed six-month extension. [14] at 23–24. Nonetheless, on April 18, 2016, the bankruptcy court granted the motion to lift the stay and denied the motion to modify the Plan. [11-1] at 316–17. Chase and the Debtors appealed. [11-1] at 320–33. On May 2, Chase moved in the bankruptcy court for a stay of the decision pending appeal, [14] at 97–100, and the bankruptcy court denied that motion on May 11, [14] at 103.

On May 5, 2016, Wheeler filed an application for a tax deed to the property in state court. [11-1] at 350. On May 25, the state court held a hearing and took the matter under advisement. [11-1] at 351. On May 27, Chase moved in the district court to stay the bankruptcy court's stay relief order. [11-1] at 352. At a hearing on June 3, Wheeler asked the district court for the opportunity to brief Chase's motion, and the district court set a briefing schedule. [11-1] at 352. On June 27, 2016, the district court granted the motion to stay. 565 B.R. at 651. However, in the intervening period, the state court issued a tax deed to Wheeler and Wheeler recorded it. *Id.* Chase and the Debtors did not appear at or contest the state court proceedings. *Id.* When the district court granted the stay, the district court instructed Wheeler not to take further action on the tax deed. *Id.*

In January 2017, the district court held that after the Plan was confirmed, "Wheeler no longer had a lien on the Debtors' restaurant property." *Id.* at 654. Accordingly, "it was an abuse of discretion for the bankruptcy court to lift the stay and permit Wheeler to pursue legal action in the state court." *Id.* Because the bankruptcy court's decision was "based on erroneous conclusions of law," the district court vacated the bankruptcy court's order modifying the automatic stay and remanded "for further proceedings consistent with this Opinion." *Id.* at 655. The district court also vacated the bankruptcy court's order denying the Debtors' motion to modify the Plan without discussing the merits of that denial. *Id.* Wheeler appealed this decision to the Seventh Circuit. [14] at 277. In July 2018, the Seventh Circuit dismissed the appeal for lack of appellate jurisdiction after determining that the district court's decision was not a final and appealable order. [14] at 316–18.

---

commencement of the case under this title." 11 U.S.C. § 362(a)(2). This automatic stay "continues until . . . the time a discharge is granted or denied." § 362(c)(2)(C). "In a case in which the debtor is an individual . . . confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan." § 1141(d)(5)(A). Thus, although the Plan had been confirmed, the automatic stay remained in place until "completion of all payments under the plan." *Id.*

3

On remand in the bankruptcy court, Chase filed (and subsequently amended) a motion requesting that the court compel Wheeler to vacate the tax deed. [11-1] at 465, 471. On November 15, 2018, the court granted that motion and entered an order (the "Tax Deed Order") stating: "The parties in this matter are authorized and Wheeler Financial, Inc. is directed to take such actions in accordance with this Order as are necessary to correct state-court or other state or county records." [11-1] at 533. In accordance with the order, Wheeler filed an unopposed motion in the state court tax deed proceeding to vacate the order issuing the tax deed. That motion was granted without prejudice in December 2018. [14] at 608.

The Debtors then moved to modify the Plan to allow Chase to pay Wheeler's claim. [11-1] at 540, 547. On February 6, 2019, the court entered an order (the "Modification Order") approving a Plan modification that allowed the Debtors to satisfy the claim by paying Wheeler $68,528.55 within seven days of the order. [11-1] at 98. On the same day, the court also entered an order (the "Stay Order") denying Wheeler's renewed request for relief from the automatic stay to pursue a tax deed in state court. [11-1] at 624. Wheeler's appeals from these three orders—the Tax Deed Order, the Modification Order, and the Stay Order—make up the consolidated appeal now before the court.

## Discussion

### I. The Stay Order and Plan Modification Order

The court first addresses the appeals from the bankruptcy court's Stay Order and Plan Modification Order.

Bankruptcy courts have the power to grant creditors relief from an automatic stay and to modify a debtor's confirmed plan. *See* 11 U.S.C. § 362(d)(1) (providing for relief from the automatic stay if the bankruptcy court makes a "for cause" finding); *see also* § 1127(b) (providing for modification of a plan if the bankruptcy court determines that "circumstances warrant" modification of the plan). The bankruptcy's court's decisions exercising this discretion can be reversed only for an abuse of discretion. *Matter of Holtkamp*, 669 F.2d 505, 507 (7th Cir. 1982); *In re Witkowski*, 16 F.3d 739, 746 (7th Cir. 1994). The court therefore reviews both the Stay Order and Plan Modification Order for an abuse of discretion.

The Bankruptcy Court abuses its discretion when "1) the decision was based on an erroneous conclusion of law, 2) the record contains no evidence on which the bankruptcy court could have based its decision, or 3) the factual findings are clearly erroneous." *Matter of Stavriotis*, 977 F.2d 1202, 1204 (7th Cir. 1992).

As a threshold matter, all of Wheeler's challenges to both the Stay Order and the Modification Order turn on arguments that are foreclosed by Judge Norgle's

4

prior order in this case. Wheeler admits as much. *See* [11] at 19 ("The Second Stay Order was squarely premised upon the Remand Opinion's erroneous law of the case that the Plan had extinguished Wheeler's lien rights"); *id.* at 24 ("Like the Second Stay Order, the Modification Order was premised on this Court's erroneous conclusion that Wheeler was an unsecured creditor under the Plan."). Given the posture of these appeals, Wheeler argues that the bankruptcy court abused its discretion by adhering to Judge Norgle's order. But the bankruptcy court had no other option. *See Kovacs v. United States*, 739 F.3d 1020, 1024 (7th Cir. 2014) ("The lower court is bound, through the mandate rule, to the resolution of any points that the higher court has addressed."). Wheeler concedes this point as well, but nevertheless argues that this court can and should "reconsider and alter" Judge Norgle's opinion. [20] at 1 n.2.

The court disagrees. Judge Norgle's opinion establishes the law of the case for both the bankruptcy court and this court on this subsequent appeal. *See, e.g.*, *In re FBN Food Servs., Inc.*, 185 B.R. 265, 277 (N.D. Ill. 1995) ("Because 'the doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions,' Judge Conlon's ruling on this issue should be binding upon us.") (citation omitted)), *aff'd and remanded sub nom. Matter of FBN Food Servs., Inc.*, 82 F.3d 1387 (7th Cir. 1996) ("Judge Aspen rejected that contention under the law of the case; he was (rightly) unwilling to reexamine Judge Conlon's decision."). "The law of the case doctrine is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances." *United States v. Adams*, 746 F.3d 734, 744 (7th Cir. 2014). In addition, the "doctrine of law of the case counsels against a judge's changing an earlier ruling that he made in the same case or that his predecessor as presiding judge had made. The doctrine has greater force . . . when there is a change of judge during the litigation and the new judge is asked to revisit the rulings of his predecessor." *HK Sys. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009) (citations omitted).

It is true that the law of the case is not an absolute bar to reconsideration; this court could revisit the legal conclusions in Judge Norgle's opinion if there was a "compelling reason for reexamination." *In re S. Beach Sec., Inc.*, 606 F.3d 366, 378 (7th Cir. 2010). Wheeler, however, does not identify any such compelling reason here. It does not point, for example, to any new facts or intervening law that would make reconsideration appropriate. *See Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1339 (7th Cir. 1997) ("The doctrine of law of the case requires the second judge in a case in which there has been reassignment to abide by the rulings of the first judge unless some *new* development, such as a new appellate decision, convinces him that his predecessor's ruling was incorrect.") (emphasis added). The court thus declines to reconsider issues decided by Judge Norgle's prior opinion.

5

More specifically, each of Wheeler's arguments with respect to the Stay Order and the Modification Order (the bankruptcy court's two February 6, 2019 orders) requires reconsideration of Judge Norgle's order. For example, Wheeler argues that the Plan's confirmation did not extinguish Wheeler's lien rights. Judge Norgle held that, as of the Plan's confirmation, "Wheeler no longer had a lien on the Debtors' restaurant property." *In re Aguirre*, 565 B.R. at 654. The court will not disturb that holding.

Likewise, Wheeler's argument that the Plan's confirmation did not extinguish its lien rights is the only basis for Wheeler's derivative claim that the bankruptcy court's Stay Order was an abuse of discretion. Wheeler argues that since its lien rights were intact and the Debtors defaulted on their obligation to pay within six months, there was adequate "cause" to lift the automatic stay under 11 U.S.C. § 362(d)(1). Judge Norgle rejected both the premise and the conclusion of this argument too, 565 B.R. at 655, and Wheeler does not argue that anything makes its latest request for relief from the stay different. The bankruptcy court's Stay Order is affirmed.

A similar principle obtains as to the Modification Order. Here too the bankruptcy court applied the law of the case, reasoning that since Judge Norgle held that Wheeler is an unsecured creditor, the Plan modification was equitable and did not violate 11 U.S.C. § 1127(f). Wheeler does not challenge the bankruptcy court's application of Judge Norgle's order. Instead, Wheeler again challenges only the premise, arguing that "the law of the case as expressed in the Remand Opinion is erroneous," and the Plan modification should have been "considered in light of Wheeler's status as a secured creditor." [11] at 26. For the same reasons discussed above—that Wheeler solely challenges Judge Norgle's order and has not met the high threshold for reconsideration of that order by, for example, identifying new facts or law—the court will not reconsider Judge Norgle's order. Because Wheeler does not provide any other ground to challenge the Modification Order, that order is affirmed as well.

## II. The Tax Deed Order

The court now turns to the Tax Deed Order. Again, that order directed Wheeler "to take such actions in accordance with this Order as are necessary to correct state-court or other state or county records." [11-1] at 533. As to this order, Wheeler advances several arguments that do not consist solely of a challenge to Judge Norgle's order. The court addresses them below. However, the court first addresses Chase's arguments that the court lacks subject matter jurisdiction over the dispute.

### A. Notice of Appeal

First, Chase contends that this court lacks appellate jurisdiction to review the Tax Deed Order because Wheeler did not properly file a notice of appeal from the Tax Deed Order when it became final.

District courts have "jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges." 28 U.S.C. § 158(a). Under this provision, orders are appealable if they "finally dispose of discrete disputes within the larger case." *Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015). If an order "conclusively resolves" a dispute that would be a "stand-alone case outside of bankruptcy," it is final. *Matter of Anderson*, 917 F.3d 566, 569 (7th Cir. 2019). "An appeal from a final bankruptcy order must be filed within 14 days from entry of the order (see [Federal Rule of Bankruptcy Procedure] . . . 8002(a)), and the time deadline for filing an appeal is mandatory and jurisdictional." *In re Lewis*, 459 B.R. 281, 291 (N.D. Ill. 2011) (citing *Browder v. Director, Dep't of Corr.*, 434 U.S. 257, 264 (1978); *see also In re Bond*, 254 F.3d 669, 673 (7th Cir. 2001)).

The bankruptcy court entered the Tax Deed Order on November 16, 2018. [11-1] at 533. Wheeler filed a notice of appeal on November 29. [11-1] at 534. While this appeal came within 14 days of the order, Chase argues that at the time, the order was not final or appealable under 28 U.S.C. § 158(a). Chase says the order did not become final until the court entered the other two orders on February 6, 2019, and Wheeler did not file another notice of appeal during the 14-day window following *those* orders. However, "[a] notice of appeal filed after the bankruptcy court announces a decision or order—but before entry of the judgment, order, or decree—is treated as filed on the date of and after the entry." Fed. R. Bankr. P. 8002(a)(2). Thus, "[e]ven if the original dismissal order was not final for purposes of appeal, a premature notice of appeal takes effect when the final judgment is entered." *In re Pratola*, 589 B.R. 779, 785 (N.D. Ill. 2018) (citing Rule 8002(a)(2)). The court is satisfied that (1) Wheeler filed a notice of appeal within 14 days of the Tax Deed Order, and (2) the bankruptcy court's subsequent orders resolved the discrete dispute between the parties. This court has appellate jurisdiction over Wheeler's appeal from the Tax Deed Order.

### B. Mootness

Next, Chase argues that the dispute over the Tax Deed Order is moot. "[A] suit becomes moot" if "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. [This occurs] only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Trinity 83 Dev., LLC v. ColFin Midwest Funding, LLC*, 917 F.3d 599, 601–02 (7th Cir. 2019) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)) (brackets in *Trinity*).

7

The Tax Deed Order directed Wheeler "to take such actions as . . . are necessary to correct state-court or other state or county records" relating to the tax deed. In accordance with the order, Wheeler filed an unopposed motion in the state court tax deed proceeding to vacate the state court order that directed issuance of the tax deed. That motion was granted in December 2018. [14] at 608. The state court order vacating the issuance of the tax deed was without prejudice—the court held the proceeding open pending this appeal. [14] at 608.

Chase argues that since the state court vacated the tax deed, there is no live dispute between the parties and the court could not provide any meaningful relief. Wheeler responds that if the bankruptcy court's order is reversed, it will seek reissuance of the tax deed.

The court agrees with Wheeler that this dispute is not moot. "Courts often adjudicate disputes where the practical impact of any decision is not assured." *Chafin*, 568 U.S. at 175. The court conceivably could grant relief in a manner that would pave the way for Wheeler to obtain a tax deed.[3] That is enough to support jurisdiction over the dispute. Moreover, even though it is the law of the case that the Plan extinguished Wheeler's lien rights, the court is mindful not to "confuse[] mootness with the merits." *Id.* at 174; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction"); *ColFin*, 917 F.3d at 602 ("Courts do not say, when a defendant wins on the law, that the case is moot.").

### C. *Rooker-Feldman*

On appeal, Wheeler advances three grounds for overturning the Tax Deed Order. The court begins with Wheeler's argument that the bankruptcy court lacked subject-matter jurisdiction over the dispute under the *Rooker-Feldman* doctrine, which prevents lower federal courts from "set[ting] aside a state court's judgment in a civil suit." *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015). According to Wheeler, the bankruptcy court violated *Rooker-Feldman* because its Tax Deed Order represented an "improper collateral attack on the State Court Judgment." [11] at 33. For the reasons explained below, the court disagrees.

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the Supreme Court explained that the *Rooker-Feldman* doctrine is "narrow" and "confined" to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. Considered in these limited terms, the doctrine does not apply to Chase's motion to vacate. For one thing, Chase has not "brought" a federal case; rather, Chase is a

---

[3] Whether such relief actually is justified on the merits is a separate question, addressed below.

8

creditor in a pre-existing case over which the bankruptcy court had already found jurisdiction. *See In re Littman*, 551 B.R. 355, 361 (N.D. Ill. 2015) (*Rooker-Feldman* doctrine inapplicable to a motion brought by "the defendant in an adversary proceeding over which the bankruptcy court had already found jurisdiction"). For another, the district court proceedings in this case—along with Chase's claimed interest in the underlying property—"commenced" *before*, not after, the state court proceedings. *See, e.g.*, *Cossio v. Blanchard*, No. 19-2219, 2020 WL 6606366, at *2 (7th Cir. Nov. 12, 2020) ("*Rooker-Feldman* precludes a district court from adjudicating a case only when the federal suit starts after a state court has ruled against the federal plaintiff" and is inapplicable where the "federal suit started before the state court ruled"). And the state court proceedings at issue here are interlocutory rather than final, as Wheeler itself emphasizes in a different portion of its brief. *See Bauer v. Koester,* 951 F.3d 863, 867 (7th Cir. 2020) (*Rooker-Feldman* applies only if the state court judgment is "final" or "effectively final"); [16] at 9 ("the State Court's order vacating the issuance of the Tax Deed was not entered with prejudice" and, in fact, "that order actually holds the Tax Deed Proceeding open"). More fundamentally, the district court directed its order only at Wheeler (*see* [11-1] at 533, ordering Wheeler to "take [] actions" that seek to "correct state-court or other state or county records"); the district court's order does not purport to set aside or overturn the state court's judgment. Applying the *Rooker-Feldman* doctrine to this case would therefore represent an expansion of that doctrine beyond the "narrow" grounds set forth in *Exxon* and in post-*Exxon* holdings from the Seventh Circuit. The court declines to take that step here.

In any event, the *Rooker-Feldman* doctrine may be inapplicable to this case for another reason: several courts have held that the *Rooker-Feldman* doctrine does not bar challenges to state court judgments for violating an automatic stay. Wheeler cites *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007), *Holt v. Lake County Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005), and *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993), for the proposition that *Rooker-Feldman* can bar federal courts from hearing challenges to tax deed proceedings. But all of those cases involved constitutional issues rather than automatic stay violations. Neither party addresses the principle that "state court judgments entered in violation of an automatic stay in bankruptcy are void ab initio and subject to collateral attack, even if the state court has (erroneously) determined that the automatic stay does not apply to the proceeding in which the order is entered." *In re Benalcazar*, 283 B.R. 514, 525–26 (Bankr. N.D. Ill. 2002) (citing *Kalb v. Feuerstein*, 308 U.S. 433 (1940)); *see also Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir. 2003) (acknowledging that the "void *ab initio*" exception to *Rooker-Feldman* "might be appropriate in some bankruptcy cases . . . in order to protect the dominant federal role in that specialized area of the law," but also noting that courts are divided on this issue and that the Seventh Circuit has "acknowledged" the existence of this "exception, but . . . not endorsed it"). While *Schmitt* did not take a position on the exception, several other courts have endorsed it, holding that

9

"when state-court litigation violates the automatic stay, the proceedings are deemed null and void ab initio, and the *Rooker-Feldman* doctrine does not bar a review of the issues presented in such litigation." *In re Kmart Corp.*, 290 B.R. 601, 610 (Bankr. N.D. Ill. 2002) (citing *In re Dunbar*, 245 F.3d 1058, 1063 (9th Cir. 2001)); *see also Schmitt v. Schmitt*, 165 F. Supp. 2d 789, 796 (N.D. Ill. 2001) (explaining that "[s]everal circuit courts have recognized this"—that is, a void ab initio— "exception to the *Rooker-Feldman* doctrine," but noting that bankruptcy appellate panels are divided on the issue). The bankruptcy court's ruling was squarely premised on the conclusion that the state court order violated the automatic stay,[4] [11-1] at 533, so *Rooker-Feldman* would not present a jurisdictional bar under the void ab initio line of cases.

The court is satisfied that it has subject matter jurisdiction over this dispute, so it now turns to the merits.

### D. The Automatic Stay

Next, Wheeler attacks the merits of the ruling and argues that the bankruptcy court erred by holding that the tax deed was void for violating the automatic stay. The court reviews the bankruptcy court's legal conclusions de novo. *In re Marcus-Rehtmeyer*, 784 F.3d 430, 436 (7th Cir. 2015).

The bankruptcy court reasoned that because (1) actions taken in violation of the automatic stay are void, and (2) reversal of an order lifting the stay is equivalent to the stay never having been lifted in the first place, then (3) actions taken between the order lifting the stay and the reversal are void. [11-1] at 666–68. Wheeler does not take issue with step one. *See Middle Tennessee News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 & n.6 (7th Cir. 2001) ("Actions taken in violation of an automatic stay ordinarily are void. . . . We have no occasion to reconsider our precedent and forage into the debate among the circuits over whether such actions are void or merely voidable."). Wheeler instead disputes the bankruptcy court's conclusion that actions taken in reliance on a stay relief order before the order is reversed are void.

As Wheeler points out, numerous courts have held that consummated sales taken in reliance on a bankruptcy court's stay relief order may moot the controversy, such that a reviewing court on appeal has no power to grant effective relief. For example, in *In re Scruggs*, 392 F.3d 124 (5th Cir. 2004), the Fifth Circuit ruled that a "final and unappealable Florida judgment remain[ed] valid because the automatic stay had been validly lifted and thus was not in place (1) when the state court's judgment was rendered or (2) when that judgment became final and no longer appealable." *Id.* at 129. There, the final and unappealable Florida judgment

---

[4] Again, whether that ruling was correct on the merits is a separate question, addressed below.

ended the case or controversy and the district court's subsequent reversal of the order that lifted the stay could not retroactively solve the mootness problem. *Id.*

The debtors in *Scruggs* raised the same argument that Chase presses here: that as a result of the district court's reversal, the "automatic stay was in effect—not lifted—when the Florida judgment was rendered, making it void *ab initio*." 392 F.3d at 128. But since the controversy became moot before the reversal, the court did not address this argument. This case has a different procedural posture. As noted above, this dispute remains live; the state court vacated the tax deed but did so without prejudice and kept the proceeding open pending this appeal. [14] at 608.

Wheeler also cites *In re La Prea Lanette Allen*, No. BAP CC-13-1315, 2014 WL 1426596 (B.A.P. 9th Cir. Apr. 14, 2014), where the court held that "a consummated sale of real property to a good faith third-party purchaser" mooted review since "the bankruptcy court cannot set aside the sale." *Id.* at *2. Unlike in *Scruggs*, the court also addressed the present issue more directly: "[T]he foreclosure sale would not be void if the bankruptcy court on remand vacated the stay relief order . . . . At the time of the foreclosure sale, there was a valid stay relief order, and HSBC relied on that order in moving forward with the sale. Subsequent vacatur of the order does not automatically render HSBC's then appropriate actions violative of the stay." *Id.* at *3. Chase does not address the reasoning in *Allen*, but instead appeals to the general principle that an order "vacating" a lower court's order has the effect of rendering that order "void." *United States v. Krilich*, 948 F. Supp. 719, 724 (N.D. Ill. 1996) (citing Black's Law Dictionary 1319, 1548 (6th ed. 1990)), *aff'd*, 126 F.3d 1035 (7th Cir. 1997).

The court agrees with Wheeler that the bankruptcy court's legal conclusion—that a tax deed obtained between a stay relief order and a subsequent reversal is void for violating the automatic stay—is not supported by case law. Most courts that have considered the issue have held that where a bankruptcy case is dismissed (and the automatic stay is dissolved), actions taken before the case is subsequently reinstated are valid and not in violation of the automatic stay. *See, e.g.*, *In re Lomagno*, 320 B.R. 473, 479 (B.A.P. 1st Cir.) ("Courts deciding the issue have generally held that the reinstatement of a dismissed bankruptcy case does not retroactively reimpose the automatic stay."), *aff'd*, 429 F.3d 16 (1st Cir. 2005); *In re Moore*, 302 B.R. 112 (B.A.P. 10th Cir. 2003) ("An action taken in reliance on a bankruptcy court's order holding the stay to be inapplicable cannot be void even if the order relied on is subsequently reversed on appeal."); *In re Holloway*, 565 B.R. 435, 438 (Bankr. M.D. Ala. 2017); *In re Moore*, No. 95-57258 NVA, 2006 WL 4468609, at *8 (Bankr. D. Md. Dec. 29, 2006); *In re Thomas*, 194 B.R. 641, 649–50 (Bankr. D. Ariz. 1995) ("[O]nce the bankruptcy case is dismissed or the automatic stay has been vacated, the debtor must seek an affirmative stay or injunction to prevent creditors from pursuing their remedies under applicable state law. If the

11

debtor does not so timely act, any actions taken by the creditor while the case is dismissed or while a stay is not in effect will be valid."); *but see In re Krueger*, 88 B.R. 238, 242 (B.A.P. 9th Cir. 1988) (holding that where "the order dismissing the case was void for lack of due process," the automatic stay "was continuously in effect from the time of the filing of the petition and the foreclosure sale was held in violation of the stay"). Nor may a bankruptcy court "retroactively" reimpose the automatic stay pending appeal. *See In re Lashley*, 825 F.2d 362, 364 (11th Cir. 1987).

In short, the general rule appears to be that courts may not retroactively impose an automatic stay that was previously lifted. There is no reason to think the rule operates any differently where, as here, the vacated order granted one creditor relief from the stay rather than dismissing the case and thereby lifting the stay completely. Because the bankruptcy court's Tax Deed Order was based on an erroneous legal conclusion—that the tax deed was void ab initio—it was an abuse of discretion. The Tax Deed Order is therefore vacated. The court does not reach the parties' additional arguments regarding the Full Faith and Credit statute.

However, this conclusion does not have immediate consequences for the parties' rights in this case. The state court has now vacated the order issuing Wheeler's tax deed. [14] at 608. And again, Judge Norgle's holding that as of the Plan's confirmation, "Wheeler no longer [has] a lien on the Debtors' restaurant property," *In re Aguirre*, 565 B.R. at 654, remains the law of the case. That means that even though the Tax Deed Order is vacated, Wheeler may not now seek reinstatement of the tax deed. Since there are no ongoing proceedings in the bankruptcy court apart from the three orders at issue here (as the parties confirmed during a status hearing on August 17, 2021 [42]), and there is nothing left for the bankruptcy court to do with respect to these three orders, the court will not remand for further proceedings.

## Conclusion

For the reasons given above, the bankruptcy court's Stay Order and Plan Modification Order are affirmed, but its Tax Deed Order is vacated. Final judgment will be entered.

Date: August 19, 2021  /s/ Martha M. Pacold
U.S. District Judge